## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **DONALD J. HEINEY, Guardian of Gaven L. Heiney, Incompetent,** | ) | **CASE NO. 4:22-cv-02232** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHARLES E. FLEMING** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CORRECTIONAL SOLUTIONS GROUP, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANT GEORGE WILSON, D.O.

Now comes Defendant, George Wilson, D.O., by and through undersigned counsel, pursuant to Fed. R. Civ. P. 56, and hereby requests summary judgment in favor of Dr. Wilson on all claims Plaintiff asserts against him[1]: First Claim for Relief (42 U.S.C. § 1983); Second Claim for Relief (Professional Negligence); Fourth Claim for Relief (Negligence); Sixth Claim for Relief (Intentional and Negligent Infliction of Emotional Distress); and Seventh Claim for Relief (Intentional Spoliation).[2]

Dr. Wilson previously filed a Motion for summary judgment (ECF No. 65), which this Court denied without prejudice to refiling, to allow the parties to complete fact discovery. (ECF No. 70). To date, the parties completed significant fact discovery, including the depositions of the Defendants and the depositions of Gaven Heiney's mother, Tina Heiney, and Gaven Heiney's grandparents, Donald and Kathy Heiney.

---

[1] Plaintiff's Third and Fifth Claims for Relief are not asserted against Dr. Wilson.
[2] Plaintiff, by and through his counsel, recently confirmed Plaintiff is no longer pursuing the spoliation claim against Dr. Wilson, because there is no evidence to support this claim, so summary judgment on this claim is unopposed and should be granted in favor of Dr. Wilson.

The facts and law conclusively establish Dr. Wilson did not act with reckless disregard and Dr. Wilson's actions during his limited involvement in Gaven Heiney's medical care do not rise to the level of deliberate indifference to Mr. Heiney's medical needs under the Fourteenth Amendment. This entitles Dr. Wilson to summary judgment. The facts and law also establish there is not a cognizable constitutional claim against Dr. Wilson, in his individual capacity, for any alleged failure to supervise or train others at the Columbiana County Jail, if Plaintiff asserts such a theory.

The remaining non-constitutional claims (Second, Fourth, and Sixth Claims for Relief) against Dr. Wilson are all state law medical claims, under O.R.C. § 2305.113. These claims also fail as a matter of law because there was no doctor-patient relationship and these claims are time-barred by the one-year statute of limitations.

In summary, there is no genuine issue of material fact on the defenses raised by Dr. Wilson in this Motion, and Dr. Wilson is entitled to judgment in his favor on all the foregoing claims as a matter of law.

A Memorandum in Support is attached hereto and incorporated herein. The Exhibits supporting this Motion are filed contemporaneously with this Motion and incorporated herein.

Respectfully submitted,

*/s/ Zachary R. Hoover*
Bobbie S. Sprader (0064015)
bobbie.sprader@dinsmore.com
Zachary R. Hoover (0097672)
zachary.hoover@dinsmore.com
Dinsmore & Shohl LLP
191 West Nationwide Boulevard, Suite 200
Columbus, Ohio 43215
Telephone (614) 628-6880
Fax (614) 628-6890
*Counsel for Defendant George Wilson, D.O*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

BRIEF STATEMENT OF THE ISSUES ............................................................ v

SUMMARY OF ARGUMENTS PRESENTED ................................................ vi

MEMORANDUM IN SUPPORT ........................................................................ 1

I.     STATEMENT OF THE CASE ................................................................ 1

II.    PROCEDURAL HISTORY ...................................................................... 1

III.   STATEMENT OF THE FACTS .............................................................. 3

       A.    Healthcare Operations at the Columbiana County Jail in December 2021 ..... 3

       B.    Gaven Heiney's Incarceration at the Columbiana County Jail from December 10, 2021 to December 23, 2021 ........................................................ 6

IV.    LAW & ANALYSIS .................................................................................. 11

       A.    Summary Judgment Standard ................................................................ 11

       B.    Plaintiff's First Claim for Relief Under § 1983 Fails as a Matter of Law Because There Is No Evidence of Deliberate Indifference Under the Fourteenth Amendment ................................................................ 12

             1.    The Evolving Standard of Deliberate Indifference to a Pretrial Detainee Under the Fourteenth Amendment .............................. 12

             2.    The Well-Settled Principles of Deliberate Indifference to the Medical Needs of Pretrial Detainees ............................................ 14

             3.    Dr. Wilson Was Not Deliberately Indifferent to Gaven Heiney's Medical Needs on December 14, 2021 ........................................ 16

             4.    Dr. Wilson Is Not Liable Under a Theory of Failure to Supervise or Train ... 28

       C.    Plaintiff's Second, Fourth, and Sixth Claims for Relief Are Pendent State Law Claims That Fail as a Matter of Law ........................................ 30

             1.    Plaintiff's Second, Fourth, and Sixth Claims for Relief Are All State Law "Medical Claims Under Ohio Law, O.R.C. § 2305.113(E)(3) ........................ 30

i

2.  *Dr. Wilson Did Not Have a Doctor-Patient Relationship with Gaven Heiney* ....................................................32

3.  *Plaintiff's Medical Claims Are Time-Barred by the One-Year Statute of Limitations Under O.R.C. § 2305.113(A)* ........................................34

**D.**     **Plaintiff's Seventh Claim for Relief Is Withdrawn Against Dr. Wilson** .........36

**V.**     **CONCLUSION** ........................................................................................37

**CERTIFICATE OF SERVICE** ...................................................................39

ii

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................ 12

*Armatas v. Aultman Health Found.*, No. 5:19-cv-00349, 2019 U.S. Dist. LEXIS 229529 (N.D. Ohio Dec. 19, 2019) ......................................................................................... 32, n.13

*Arrington-Bey v. City of Bedford Heights*, No. 14 CV 2514, 2016 U.S. Dist. LEXIS 27105 (N.D. Ohio Mar. 3, 2016) ................................................................................. 29, 33, 34

*Arrington-Bey v. City of Bedford Hts.*, 858 F.3d 988 (6th Cir. 2017) ......................................... 33

*Baker v.* Stevenson, 605 F. App'x 514 (6th Cir. 2015) ................................................ 21

*Bell v. Ohio Dep't of Rehab. & Corr.*, 128 Ohio Misc.2d 4, 2004-Ohio-2627 (Ct. of Cl.) ......... 34

*Brawner v. Scott Cty.*, 14 F.4th 585 (6th Cir. 2021)......................................................... passim

*Briggs v. Oakland Cty.*, 213 F. App'x 378 (6th Cir. 2007) .............................................. 20

*Britt v. Hamilton Cty.*, No. 21-3424, 2022 U.S. App. LEXIS 3852, (6th Cir. Feb. 10, 2022)... 14, 24, 25, n.10

*Bryant v. Hensley*, No. 23-5608, 2024 U.S. App. LEXIS 6750 (6th Cir. Mar. 19, 2024)........... 27

*Burwell v. City of Lansing*, 7 F.4th 456 (6th Cir. 2021)................................................... 12

*Butler v. Jewish Hosps.*, 1995 Ohio App. LEXIS 1787 (Ohio App. Ct. May 3, 1995) ............... 32

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ......................................................... 11

*Chalmers v. HCR ManorCare, Inc.*, 2017-Oho-5678, 93 N.E.3d 1237 (6th Dist.)..................... 30

*Clark-Murphy v. Foreback*, 439 F.3d 280 (6th Cir. 2006) .............................................. 27

*Comstock v. McCrary*, 273 F.3d 693 (6th Cir. 2001)...................................................... 15

*Cope v. Cogdill*, 3 F.4th 198 (5th Cir. 2021) ........................................................... 14

*Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995) ..................................................... 12

*Cox v. Treadway*, 75 F.3d 230 (6th Cir. 1996) .......................................................... 35

*Crissinger v. The Christ Hosp.*, 2017- Ohio 9256, 106 N.E.3d 798 (Ohio App. Ct. 2017) ......... 32

*Davis v. Oakland Cty.*, NO. 96-1678, 1998 U.S. App. LEXIS 7172 (6th Cir. Apr. 7, 1998)....... 20

*Elvis Presley Enterprises v. Elvisly Yours, Inc.,* 936 F.2d 889 (6ᵗʰ Cir. 1991)........................... 11

*Estelle v. Gamble*, 429 U.S. 97 (1976) ................................................................. 15

*Farmer v. Brennan*, 511 U.S. 825 (1994) ........................................................ 12, 13, 14

*Frysinger v. Leech*, 32 Ohio St.3d 38, 512 N.E.2d 337 (1987) ......................................... 35

*Galloway v. Anuskiewicz*, 518 F. App'x 350 (6th Cir. 2013) ............................................ 18

*Graham ex rel. Estate of Graham v. Cnty. Of Washtenaw*, 358 F.3d 377 (6th Cir. 2004)........... 17

*Greene v. Crawford Cty.*, 22 F.4th 593 (6th Cir. 2022) ............................................. 13, 14, 19, 27

*Griffith v. Franklin County*, 975 F.3d 554 (6th Cir. 2020) .............................................. 20

*Grote v. Kenton Cty.*, 85 F.4th 397 (6th Cir. 2023)................................................... 13, 14

*Harvey v. Campbell Cty.*, 453 F. App'x 557 (6th Cir. 2011)............................................ 29

*Helphenstine v. Lewis Cty.*, 60 F.4th 305 (6th Cir. 2023) .......................................... 15, 21

*Hyman v. Lewis*, 27 F.4th 1233 (6th Cir. 2022)...................................................... n.8

*Jones v. Muskegon Cnty.*, 625 F.3d 935 (6th Cir. 2010).......................................... 17, 19, 26

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015)...................................................... 13, 14

*Lawler v. Hardeman County*, 93 F.4th 919 (6th Cir. 2024) ............................................ n.9

*Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241 (6th Cir. 1989). .................................... 30, n.3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)................................ 11

*McKernan v. City of Seven Hills*, No. 1:20-CV-00032-PAB, 2023 U.S. Dist. LEXIS 60452 (N.D. Ohio Apr. 4, 2023) ......................................................................................... 37

*Miller v. Calhoun Cty.*, 408 F.3d 803 (6th Cir. 2005) .................................................. 29

*Montanez v. Metrohealth Med. Ctr.*, 8th Dist. Cuyahoga No. 92567, 2009-Ohio-3881 ............. 35

*Montgomery v. Ohio State Univ.*, 10th Dist. Franklin No. 11AP01024, 2012-Ohio-5489.......... 32

*Preston v. Cty. Of Macomb*, No. 18-12158, 2022 U.S. Dist. LEXIS 177535 (E.D. Mich. Sep. 29, 2022)................................................................................................................. n.8

*Rayfield v. City of Grand Rapids*, 768 F. App'x 495 (6th Cir. 2019)............................................. 35

*Reid v. Scott Cty. Det. Ctr.*, No. 5:23-CV-201-KKC, 2024 U.S. Dist. LEXIS 165201 (E.D. Ky. Sep. 13, 2024)............................................................................................................ 29

*Rouster v. Cty. of Saginaw*, 749 F.3d 437 (6th Cir. 2014)...................................................... passim

*Russell v. Witham*, No. 1:07 CV 2890, 2007 U.S. Dist. LEXIS 93958 (N.D. Ohio Dec. 20, 2007) ......................................................................................................................... 31, n.13

*Singh v. Cleveland Clinic Found.*, 2013-Ohio-2465, 2013 Ohio App. LEXIS 2411 (Ohio App. Ct. June 13, 2013) ........................................................................................................ 32

*Speers v. County of Berrien*, 196 F. App'x 390 (6th Cir. 2006).................................................. 27

*St. John v. Bosley, Inc.,* 481 F. App'x 988 (6th Cir. 2012).................................................. 31, 35

*Stefan v. Olson*, No. 1:10 CV 671, 2011 U.S. Dist. LEXIS 71761 (N.D. Ohio July 5, 2011) .... 32, 33, 34

*Stefan v. Olson*, 497 F. App'x 568 (6th Cir. 2012) ............................................................... n.12

*Trozzi v. Lake Cty.*, 29 F.4th 745 (6th Cir. 2022)................................................................... n.8

*Wells v. Johenning*, 63 Ohio App. 3d 364, 578 N.E.2d 878 (1989) .......................................... 35

*Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976)............................................................... 15, 18

*Westmoreland v. Butler Cty.*, 29 F.4th 721 (6th Cir. 2022)....................................................... n.8

*Whyde v. Sigsworth*, No. 22-3581, 2024 U.S. App. LEXIS 28501 (6th Cir. Nov. 8, 2024).. passim

*Whyde v. Sigsworth*, No. 3:19 CV 683, 2022 U.S. Dist. LEXIS 59014, (N.D. Ohio Mar. 30, 2022).......................................................................................................................... passim

*Wiertella v. Lake Cty.*, No. 1:20-cv-2739, 2024 U.S. Dist. LEXIS 53247 (N.D. Ohio Mar. 26, 2024)................................................................................................................... 12, 18, 24

*Williams v. Mehra*, 186 F.3d 685 (6th Cir. 1999)................................................................ 27, 28

*Winkler v. Madison Cty.*, 893 F.3d 877 (6th Cir. 2018) ........................................................ passim

*Wong v. Wong*, No. 14-cv-04760-JST (PR), 2015 U.S. Dist. LEXIS 51087 (N.D. Cal. Apr. 17, 2015)................................................................................................................... 33, 34

## Statutes

42 U.S.C. § 1983 ................................................................................................... passim

Ohio Admin Code 5120:1-7-02 ...................................................................................... n.4, n.5

Ohio Admin. Code 5120:1-8-09 ..................................................................................... n.4, n.5

O.R.C. § 2305.113 ............................................................................................... passim

## Rules

Fed. R. Civ. P. 15 ............................................................................................... 35, 36

Fed. R. Civ. P. 56.............................................................................................. 2, 11

Local Rule 7.1(f) .............................................................................................. 2

## <u>BRIEF STATEMENT OF THE ISSUES</u>

1) Was George Wilson, D.O. deliberately indifferent to the medical needs of Gaven Heiney at the time of Dr. Wilson's single instance of involvement in Mr. Heiney's medical care on December 14, 2021 between 10:00 a.m. and 11:00 a.m.?

2) Was George Wilson, D.O. deliberately indifferent to the medical needs of Gaven Heiney under a theory of failure to supervise or train?

3) Are Plaintiff's Second, Fourth, and Sixth Claims for Relief state law "medical claims" under O.R.C. § 2305.113(E)(3)?

4) Did George Wilson, D.O. have a doctor-patient relationship with Gaven Heiney?

5) Are Plaintiff's Second, Fourth, and Sixth Claims for Relief time-barred by the one-year statute of limitations under O.R.C. § 2305.113(A)?

## SUMMARY OF ARGUMENTS PRESENTED

The facts are undisputed that George Wilson, D.O. had a single instance of involvement with Gaven Heiney's medical care via a telephone call with Melanie Agnone, LPN, on December 14, 2021 between 10:00 a.m. and 11:00 a.m.  All the information provided to Dr. Wilson at that time was consistent with Gaven Heiney withdrawing from alcohol.  Thus, Dr. Wilson used his sound medical judgment to place Gaven Heiney on the alcohol withdrawal protocol at the Columbiana County Jail, which includes prescription medication Ativan (a benzodiazepine), thiamine, and a multivitamin.

Dr. Wilson was never contacted about, notified of, or involved in any of the subsequent events at the Columbiana County Jail involving Mr. Heiney's medical condition or the use of pepper spray on Mr. Heiney after December 14, 2021.  These subsequent events all involved other personnel at the jail, including nurses and correctional staff at the Jail.

Precedent in the Sixth Circuit and Northern District of Ohio holds that Dr. Wilson's actions during his limited involvement do not amount to reckless disregard or a deliberate indifference to Mr. Heiney's medical needs under the Fourteenth Amendment.  Thus, Dr. Wilson is entitled to summary judgment.

The facts and law also establish there is not a cognizable constitutional claim against Dr. Wilson, individually, for any alleged failure to supervise or train, if Plaintiff asserts such a theory.

The remaining non-constitutional claims (Second, Fourth, and Sixth Claims for Relief) against Dr. Wilson are all state law medical claims, under O.R.C. § 2305.113.  These state law claims fail as a matter of law because these claims are time-barred by the one-year statute of limitations.  Alternatively, there is no doctor-patient relationship between Dr. Wilson and Gaven Heiney during the incarceration at issue, so the state law claims fail as a matter of law.

Finally, Plaintiff did not sufficiently plead a spoliation claim against Dr. Wilson. Nevertheless, there are no facts to support a spoliation claim against Dr. Wilson, such that Plaintiff does not oppose Dr. Wilson's Motion on this claim.

## MEMORANDUM IN SUPPORT

### I.     STATEMENT OF THE CASE

Plaintiff alleges federal constitutional violations of the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983 for use of excessive force and deliberate indifference to Gaven Heiney's medical care during Gaven Heiney's incarceration at the Columbiana County Jail from December 10, 2021 to December 23, 2021.  (ECF No. 1).  Plaintiff also alleges several state law negligence claims.  (*Id.*).

Plaintiff only asserts the following claims against Dr. Wilson in the First Amended Complaint: First Claim for Relief (42 U.S.C. § 1983); Second Claim for Relief (Professional Negligence); Fourth Claim for Relief (Negligence); Sixth Claim for Relief (Intentional and Negligent Infliction of Emotional Distress); and Seventh Claim for Relief (Intentional Spoliation). (See *id.*).  The Third and Fifth Claims for Relief are not asserted against Dr. Wilson.  (See *id.*).

Plaintiff does not oppose Dr. Wilson's Motion on the Seventh Claim for Relief because the facts establish Dr. Wilson was not involved in the events giving rise to this spoliation claim.

### II.    PROCEDURAL HISTORY

On December 9, 2022, Plaintiff filed his Complaint against eleven different individuals and entities, plus John Does, asserting six claims for relief.  (ECF No. 1).

On July 3, 2023, Plaintiff filed his First Amended Complaint.  (ECF No. 41).  Plaintiff added three new Defendants to the First Amended Complaint: Laura Zuch-Battaglia, RN, George Wilson, D.O., and Merna J. Baker.  (*Id.*).  Dr. Wilson is sued in his individual and official capacity.[3]

---

[3] An official capacity claim is "'another way of pleading an action against an entity of which an officer is an agent.' . . . [A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989).

1

(*Id.* at ¶8).  Plaintiff's First Amended Complaint asserts the same six claims for relief asserted in the Complaint, and adds a new seventh claim for relief for intentional spoliation.  (*Id.*).

On February 14, 2024, Dr. Wilson filed a Motion for Summary Judgment.  (ECF No. 65). Plaintiff opposed said Motion with his own Motion under Fed. R. Civ. P. 56(d) requesting time to complete discovery and depose the Defendants.  (ECF No. 66).  Dr. Wilson then opposed Plaintiff's Motion under Fed. R. Civ. P. 56(d).  (ECF No. 68).

On April 17, 2024, this Court denied Dr. Wilson's Motion for Summary Judgment (ECF No. 65) without prejudice to refiling after the close of non-expert discovery and by the dispositive motion deadline, and granted Plaintiff's Motion under Fed. R. Civ. P. 56(d).  (ECF No. 70).

On August 20, 2024, this Court granted the Joint Motion to amend the case schedule (ECF No. 76), which extended the non-expert discovery deadline to November 18, 2024.  The parties subsequently filed another Joint Motion to continue the case management schedule with a proposed non-expert discovery deadline of January 31, 2025.  (ECF No. 93).  On November 26, 2024, this Court denied the Joint Motion (ECF No. 93) and stayed all case management dates pending the outcome of private mediation.

Pursuant to LR 7.1(f), Defendant certifies this case is on the complex track pursuant to this Court's Case Management Conference Order (ECF No. 35).  Defendant also certifies this memorandum adheres to the relevant page limitations set forth in LR 7.1(f), with a 7-page extension to the relevant page limitations as modified per this Court's Order on February 5, 2025. (*See also* ECF No. 96).

### III.    STATEMENT OF THE FACTS

#### A.    <u>Healthcare Operations at the Columbiana County Jail in December 2021</u>

Columbiana County contracted with Defendant Correctional Solutions Group, LLC ("CSG") to operate the Columbiana County Jail (the "Jail") and to provide healthcare services to inmates in the Jail.  (ECF No. 41, at ¶ 15).

In December 2021, there were three Licensed Practical Nurses (LPNs) and one Registered Nurse (RN) under contract with CSG to provide healthcare services to inmates in the Jail. (Deposition of Melanie Agnone, LPN, attached hereto as **Exhibit A**, at 21:4-6.  Melanie Agnone, LPN, Candy Hively, LPN, and Laura Zuch-Battaglia, RN were the three nurses under contract with CSG to provide healthcare services at the Jail in December 2021.  (**Exhibit A**, at 12:13-15); (Deposition of Candy Hively, LPN, attached hereto as **Exhibit B**, at 9:7-17); (Deposition of Laura Zuch-Battaglia, RN, attached hereto as **Exhibit C**, at 9:5-14).  The nurses worked at the Jail daily, 40 hours per week; however, there was not nursing coverage at the Jail 24 hours per day.  (**Exhibit A**, at 21:1-16).  The nurses rounded on inmates in the Jail three times per day to administer medications ("med pass"), and the nurses also rounded daily on inmates who were held in booking cells for medical purposes.  (**Exhibit A**, at 33:15-34:3; 84:16-20).  The nurses evaluate inmates during nursing rounds and during med pass, which includes taking inmates' vitals and asking the inmates about their symptoms.  (**Exhibit A**, at 33:15-21).

Nurse Zuch-Battaglia was under contract with CSG to serve as the Health Service Administrator ("HSA") at the Jail from 2020 through 2022.  (**Exhibit C**, at 63:5-8); (*See also* **Exhibit A**, at 18:15-18).  As the HSA, Nurse Zuch-Battaglia managed the overall healthcare operations at the Jail, among other healthcare related responsibilities at the Jail.  (**Exhibit C**, at 62:4-15).  Nurse Zuch-Battaglia trained Nurse Agnone and Nurse Hively about healthcare

operations at the Jail.  (**Exhibit B**, at 15:1-10).  Nurse Zuch-Battaglia also taught CPR at the Jail.

(**Exhibit C**, at 38:11).  Dr. Wilson was not responsible for and was not involved in training the

nurses at the Jail.  (**Exhibit A**, at 115:13-17); (**Exhibit B**, at 104:16-22).

In December 2021, Nurse Zuch-Battaglia, was the immediate supervisor of the LPNs at the

Jail.  (**Exhibit A**, at 18:12-16); (**Exhibit C**, at 15:20-16:2).  Nurse Zuch-Battaglia, as the nurses'

supervisor, was generally the first point of contact for the LPNs to relay information about an

inmate's medical condition.  (**Exhibit B**, at 101:19-23); (**Exhibit A**, at 18:12-16).

George Wilson, D.O. is a physician who is and has been licensed to practice medicine in

the State of Ohio since 1999.  (Deposition of George Wilson, D.O., attached hereto as **Exhibit D**,

at 6:10-16).  In December 2021, Dr. Wilson was under contract with CSG to be the physician at

the Jail.  (**Exhibit D**, at 10:13-16).  Dr. Wilson also serves as the Columbiana County, Ohio

coroner, and he works as a primary care physician at Salem Regional Medical Center, where he

previously worked as a hospitalist.  (**Exhibit D**, at 9:3-8; 12:22-13:11).  Dr. Wilson is experienced

treating individuals with addiction issues going through withdrawal. (**Exhibit D**, at 12:22-14:1).

Dr. Wilson was on-call 24/7 to the medical staff at the Jail via phone or text.  (**Exhibit D**,

at 45:11-15; 73:11); (*See also* **Exhibit A**, at 19:20-23).  It is not unusual for the nurses to call Dr.

Wilson about inmates going through withdrawal at the Jail.  (**Exhibit D**, at 70:23-71:7) (**Exhibit

A**, 106:23-7).  If an inmate needs immediate medical attention, the nurses can independently send

an inmate to an outside medical facility.  (**Exhibit D**, at 49:22-50:5).

In addition to his 24/7 on-call availability at the Jail, Dr. Wilson generally visits the jail

weekly; however, there is not a set schedule for his visits and some weeks Dr. Wilson will not

need to go to the Jail if the nurses tell him there are no inmates with medical conditions that Dr.

Wilson needs to see.  (**Exhibit D**, 17:-11-24; 88:3-8).  Dr. Wilson does not round on the inmates

in their pods/cells at the Jail for safety reasons, and he does not examine every inmate in the Jail. (**Exhibit D**, at 18:3-16; 19:22-25; 25:19-22). Dr. Wilson does not receive a list of every inmate incarcerated in the Jail, so he does not know the identity of every inmate in the Jail at any given time. (**Exhibit D**, at 25:9-14). Instead, the nurses create a list of inmates with medical conditions who need to be seen by Dr. Wilson, and then these inmates are brought into the medical office at the Jail where Dr. Wilson reviews the inmates' charts and examines these inmates. (**Exhibit D**, at 18:3-16). Dr. Wilson relies on the judgment of the nurses who are in the Jail daily to identify inmates with complaints, symptoms, and conditions who need seen by a physician. (**Exhibit D**, at 19:5-8). In addition, inmates can request to be seen by the medical staff, also known as a "sick call."[4] (**Exhibit A**, at 119:16-22). There is no evidence Mr. Heiney made a "sick call" request during his incarceration. (**Exhibit A**, at 120:3-5). The only time Dr. Wilson has access to the medical file of an inmate in the Jail is when Dr. Wilson is in the Jail seeing that inmate. (**Exhibit D**, at 27:8-11). When Dr. Wilson examines an inmate, he creates a handwritten note of his examination that goes into the inmate's medical file. (**Exhibit D**, at 26:23-27:2). Dr. Wilson never saw or examined Mr. Heiney, so there is not a progress note by Dr. Wilson in this case. (**Exhibit C**, at 61:10-22).

In short, Dr. Wilson only becomes aware of an inmate in the Jail if the medical staff bring that inmate to Dr. Wilson's attention, or if the nurses place that inmate on the list to be seen by Dr. Wilson and then that inmate is brought into the medical office in the Jail and examined by Dr. Wilson. (**Exhibit D**, at 25:9-26:2).

---

[4] A "sick call" can be completed by a physician or qualified health care personnel, such as a nurse. Ohio Admin. Code 5120:1-8-09(F); Ohio Admin Code 5120:1-7-02(B)(40); *see also* (**Exhibit C**, at 65:19-66:2).

Before a pretrial detainee is incarcerated in the Jail, he must goes through the booking process at the Jail.  A Sergeant or Lieutenant observes the pretrial detainee to identify if he can be booked in the jail or needs to be sent to a hospital due to an immediate medical need or due to intoxication.  (Deposition of Josh Danko, excerpts attached hereto as **Exhibit E**, at 112:21-114:5).  There is a medical prescreening form and a classification prescreening form completed for every pretrial detainee during the booking process at the Jail.[5]  (**Exhibit E**, 114:6-22) (**Exhibit A**, at 31:1-32:6).  The medical prescreening form identifies sixty-nine different medical conditions and symptoms, as well as COVID-19 vaccination status.  (**Exhibit E**, 115:2-23).  The medical prescreen also requires pretrial detainees to disclose any prescription medications.  (**Exhibit A**, at 112:20-113:4).  The classification prescreening form identifies if the pretrial detainee has alcohol dependence and drug addiction.  (**Exhibit A**, at 31:1-32:6).  The nurses at the Jail gather these prescreen booking sheets daily and review these forms.  (**Exhibit A**, at 16:1-17:5).  Dr. Wilson is generally not involved in the booking process at the Jail, unless the nurses call him about a newly booked inmate who needs their prescription medications continued.  (**Exhibit D**, at 18:19-24); (**Exhibit A**, at 16:1-17:5).

> **B.**     **Gaven Heiney's Incarceration at the Columbiana County Jail from December 10, 2021 to December 23, 2021**

On or about December 10, 2021, Gaven Heiney was arrested and charged with Tampering with Evidence, Obstructing Official Business, Resisting Arrest, and Disorderly Conduct.  (ECF No. 41, at ¶ 14).  Thereafter, Mr. Heiney was incarcerated in the Columbiana County Jail from December 10, 2021 to December 23, 2021.  (*Id.* at ¶ 1).

---

[5] Correctional officers are permitted by Ohio law to perform prescreens and receiving screens for pretrial detainees during the booking process.  Ohio Admin. Code 5120:1-8-09(B), (C); Ohio Admin Code 5120:1-7-02(B)(21).

Upon arrival to the Jail on or about the night of December 10, 2021/early morning of December 11, 2021, Mr. Heiney went through the booking process.  Mr. Heiney was asked all sixty-nine questions in the medical prescreen form about his medical conditions, his symptoms, his vaccination status, and if he was on any prescription medications.  (**Exhibit E**, 115:2-23).  Mr. Heiney responded he did not have any medical conditions or symptoms, he was not vaccinated for COVID-19, and he was not on any prescription medications, as reflected in his medical prescreen form at the Jail.  (**Exhibit E**, at 115:24-116:3); (**Exhibit A**, at 112:20-113:4).  Mr. Heiney's classification prescreening form states Mr. Heiney denied alcohol dependence and denied drug addiction.  (**Exhibit A**, at 31:25-32:6).  Dr. Wilson was not called about Mr. Heiney during the booking process because there were not any medical conditions, symptoms, or prescription medications identified by Mr. Heiney.  (**Exhibit A**, 113:12-15).

Between the night of December 13, 2021, and morning of December 14, 2021, Mr. Heiney reported to a Lieutenant at the Jail he was going through withdrawal.  (**Exhibit A**, at 50:20-51:10, discussing **Exhibit 8**).  On December 14, 2021, around 10:00 a.m., Nurse Agnone physically assessed Mr. Heiney for his reported withdrawal.  (**Exhibit A**, at 108:1-15).  Nurse Agnone took Mr. Heiney's vitals, asked him about his symptoms, and asked him what medications or drugs he had been taking.  (**Exhibit A**, at 108:1-15).  Mr. Heiney reported he was starting to withdraw, has been on benzodiazepines ("benzos"), specifically Xanax, and drinks a lot every day.  (**Exhibit A**, at 55:20-56:9).  Mr. Heiney's vital signs at the time of Nurse Agnone's examination were a pulse of 108, oxygenation of 99%, temperature of 98.9, and blood pressure of 138/90.  (**Exhibit A**, at 52:7-18, discussing **Exhibit 8,** attached and incorporated to **Exhibit A**).  Mr. Heiney's elevated pulse and blood pressure are consistent with alcohol withdrawal.  (**Exhibit D**, at 69:20-70:2).  Mr. Heiney's symptoms during Nurse Agnone's assessment were "shaking, sweating, and nauseated."

(**Exhibit A**, at 55:20-56:9).  These symptoms are consistent with alcohol withdrawal.  (**Exhibit A**, at 54:7-24).

Nurse Agnone called Dr. Wilson on December 14, 2021, between 10:00 a.m. and 11:00 a.m.  (**Exhibit A**, at 52:7-20; 54:2-4).  The facts conclusively establish this is <u>Dr. Wilson's only involvement</u> with Gaven Heiney's medical care at the Jail.  (**Exhibit A**, at 55:20-56:9); (**Exhibit D**, at 51:5-16).

The call between Dr. Wilson and Nurse Agnone was a dynamic conversation where Nurse Agnone provided Dr. Wilson with information about Mr. Heiney, Dr. Wilson' asked Nurse Agnone questions, Nurse Agnone answered those questions, and back and forth.  (**Exhibit A**, 110:20-25).  Nurse Agnone provided Dr. Wilson with Mr. Heiney's self-report of withdrawal from alcohol and benzos, Mr. Heiney's vital signs at that time, and Mr. Heiney's symptoms of "shaking, sweating, and nauseated" as documented in Nurse Agnone's note at 10:00 a.m. on December 14, 2021.  (**Exhibit D**, at 67:13-69:19); (**Exhibit A**, at 55:20-56:2).  Additionally, Dr. Wilson asked Nurse Agnone about Mr. Heiney's medical history, any other drugs abused by Mr. Heiney, and information to calculate a CIWA score (an alcohol withdrawal score), which accounts for a variety of symptoms such as hallucinating, fevers, nausea, vomiting, abdominal pain, and dilated eyes.  (**Exhibit D**, at 68:14-69:19).  There is no evidence Mr. Heiney had hallucinations, fever, vomiting, abdominal pain, or dilated eyes on December 14, 2021, when Dr. Wilson was called about Mr. Heiney.  (*See* **Exhibit A**, at 52:7-53:1, discussing the symptoms identified in Nurse Agnone's note at 10:00 a.m. on December 14, 2021, as documented in **Exhibit 8**).  During his call with Nurse Agnone, Dr. Wilson likely did not receive the name of Gaven Heiney, but rather received all the foregoing clinical information about an unnamed inmate.  (**Exhibit D**, at 68:10-11).

In response to the reported symptoms, medical history, and vitals of Mr. Heiney on December 14, 2021, Dr. Wilson placed Mr. Heiney on the alcohol detox/withdrawal protocol at the Jail.  (**Exhibit D**, 61:4-6); (**Exhibit A**, at 56:3-6).  This written withdrawal protocol at the Jail in December 2021 included daily prescription medication Ativan (a benzodiazepine) along with thiamine and a multivitamin.  (**Exhibit B** 98:7-21).  "If somebody is suffering from alcohol withdrawal, then benzodiazepine is a treatment of choice."  (**Exhibit D**, at 62:8-10).

After an inmate is placed on the withdrawal protocol, the nurses at the Jail monitor the inmate and administer the medications to the inmate, which the nurses are authorized to do by the State of Ohio with their nursing licenses.  (**Exhibit A**, at 55:16-19; 105:16-19).

After Mr. Heiney was placed on the withdrawal protocol, he was moved to a booking cell on December 14, 2021, where there is 24-hour surveillance for constant monitoring and frequent rounding by the nurses.  (**Exhibit A**, at 64:2-65:3).

Dr. Wilson had no further contact about or involvement with Mr. Heiney during the remainder of his incarceration at the Jail through December 23, 2021.  (**Exhibit D**, at 51:5-16) (*See also* **Exhibits** *infra*).

The vast majority of Plaintiff's allegations in this case pertain to the medical condition of Mr. Heiney and the events after December 14, 2021.  (*See* ECF No. 41, at ¶¶ 25-36).  This includes the use of pepper spray on Mr. Heiney on December 21, 2021 and again on December 23, 2021.  (ECF No. 41, at ¶26, 31-32).  It is undisputed Dr. Wilson was not contacted about or involved in any of the events after he was called on December 14, 2021.  (**Exhibit D**, at 28:13-17; 76:17-24) (Text messages produced by Dr. Wilson about Mr. Heiney do not begin until December 24, 2021, after the incarceration at issue ended); (**Exhibit A**, at 111:6-11, 114:13-21); (**Exhibit C**, at 64:6-

16).[6]  In December 2021, Nurse Hively relayed the events about Mr. Heiney's medical condition to the HSA Laura Zuch-Battaglia, RN, and Nurse Hively did not contact Dr. Wilson about Mr. Heiney during his incarceration.  (**Exhibit B**, at 101:24-102:9).  Thomas Mackie, the Warden at the Columbiana County Jail in December 2021, did not contact Dr. Wilson about Mr. Heiney during his incarceration.  (Deposition of Thomas Mackie, excerpts attached hereto as **Exhibit F**, at 67:16-18; 79:17-21).  Josh Danko was the Facility Compliance Administrator at the Columbiana County Jail during Mr. Heiney's incarceration.  (**Exhibit E**, at 17:22-25).  Mr. Danko was involved in Mr. Heiney's incarceration in the Jail on December 21 and 23, 2021, and Mr. Danko never contacted Dr. Wilson about Mr. Heiney during his incarceration.  (**Exhibit E**, at 116:8-23).  Tyler Prvonozac was an officer-in-charge at the Jail who was involved with Mr. Heiney's incarceration in the Jail on December 13, 20, 21, and 23, 2021. (Deposition of Tyler Prvonozac, excerpts attached hereto as **Exhibit G**, at 16:21-23; 47:1-9; 73:3-13; 77:17-23).  Mr. Prvonozac interacted with nurses at the Jail about Mr. Heiney, but Mr. Prvonozac never contacted Dr. Wilson about Mr. Heiney.  (**Exhibit G**, at 32:17-34:11, 72:6-12, 72:22-73:2).

It is also undisputed Dr. Wilson was not present for and he was not involved in the events at the Jail on December 23, when Mr. Heiney was pepper sprayed, CPR was performed on Mr. Heiney, and Mr. Heiney was transported from the Jail via EMS ambulance to the ER.  (**Exhibit A**, 113:21-114); (**Exhibit B**, at 103:1-4) (Deposition of Seth Fraser, excerpts attached hereto as **Exhibit H**, at 21:22-24, 102:11-14) (Sergeant Seth Fraser did not contact Dr. Wilson about events on December 23, 2021 involving Mr. Heiney at the Jail).  The only CSG medical staff at the Jail

---

[6] Gaven Heiney's mother, Tina Heiney, and Gaven Heiney's grandparents, Donald and Kathy Heiney, do not know who Dr. Wilson is, and they never spoke with him or about him during any of their conversations with individuals at the Jail.  (Deposition of Tina Heiney, excerpts attached as **Exhibit I**, at 140:9-24) (Deposition of Donald Heiney, excerpts attached hereto as **Exhibit J**, at 95:21-96:6); (Deposition of Kathy Heiney, excerpts attached hereto as **Exhibit K**, at 79:11-80:9, 104:9-13).

who responded to Mr. Heiney's medical condition on December 23, 2021 were Nurse Agnone and Nurse Hively.[7]  (**Exhibit B**, at 102:23-25).

It was not until after Mr. Heiney's December 23, 2021 ER visit that Dr. Wilson learned Gaven Heiney's name and learned about the events that transpired at the Jail involving Mr. Heiney after Dr. Wilson's December 14, 2021 call with Nurse Agnone.  (**Exhibit D**, at 68:2-13; 76:17-24) (Text messages produced by Dr. Wilson about Mr. Heiney do not begin until December 24, 2021, after the incarceration at issue ended).

## IV.  LAW & ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show there is a genuine issue of material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes.  *Elvis Presley Enterprises v. Elvisly Yours, Inc.,* 936 F.2d 889, 895 (6th Cir. 1991).  "A 'material' fact is one that 'might affect the

---

[7] An EMS team was called by the Jail and arrived at the Jail on December 23, 2021, in response to Mr. Heiney's medical condition.  There is no evidence the EMS team was employed by or affiliated with CSG.

outcome of the suit under the governing law.'"  *Wiertella v. Lake Cty.*, No. 1:20-cv-2739, 2024 U.S. Dist. LEXIS 53247, at *26 (N.D. Ohio Mar. 26, 2024) (internal citations omitted).  "The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

   **B.**   **Plaintiff's First Claim for Relief Under § 1983 Fails as a Matter of Law Because There Is No Evidence of Deliberate Indifference Under the Fourteenth Amendment**

         **1.**   *The Evolving Standard of Deliberate Indifference to a Pretrial Detainee Under the Fourteenth Amendment*

Historically, the Federal Courts "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Brawner v. Scott Cty.*, 14 F.4th 585, 591 (6th Cir. 2021).  The rubric for deliberate indifference claims historically involved both an objective and a subjective component.  *Id.* at 591; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "To meet the objective component, the plaintiff must show that the medical need is 'sufficiently serious.'" *Brawner*, 14 F4th at 591 (quoting *Farmer*, 511 U.S. at 834).  "To meet the subjective component, the plaintiff must show that 'an official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'"  *Brawner*, 14 F.4th at 591 (quoting *Farmer*, 511 U.S. at 837).  "'It is not enough for plaintiff to demonstrate a question of fact whether' officers '*should* have known' about the medical condition." *Burwell v. City of Lansing*, 7 F.4th 456, 465 (6th Cir. 2021) (emphasis in original) (internal citations omitted).

Under *Farmer*, the subjective component of "[t]he standard, then, has generally been equated to one of 'recklessness.'"  *See, e.g.*, *Winkler v. Madison Cty.*, 893 F.3d 877, 891 (6th Cir. 2018)

(quoting *Farmer*, 511 U.S. at 836) (emphasis added).  "A plaintiff need not show that the defendant acted with the very purpose of causing harm, but must show something greater than negligence or malpractice."  *Winkler*, 893 F.3d at 891 (quoting *Farmer*, 511 U.S. at 835).

The deliberate indifference standard began to evolve following the Supreme Court of the United States' decision in *Kingsley*.  *Kingsley v. Hendrickson*, 576 U.S. 389 (2015).  In *Kingsley*, the Supreme Court analyzed the standard applicable to an excessive force claim brought by a pretrial detainee under the Fourteenth Amendment's Due Process Clause.  *Id.*  Although *Kingsley* did not involve a claim of deliberate indifference to medical needs, the Sixth Circuit in *Brawner* applied *Kingsley* to modify the subjective prong of a deliberate indifference test for pretrial detainees.  *Brawner*, 14 F.4th at 596.[8]

Thereafter, the Sixth Circuit in *Greene* explained *Brawner* did not eliminate a subjective component of the analysis for a deliberate indifference claim, but "modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness: 'A pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'"  *Greene v. Crawford Cty.*, 22 F.4th 593, 606-077 (6th Cir. 2022) (quoting *Brawner*, 14 F.th at 597).  "In other words, a plaintiff must prove that the defendant acted "deliberately (not accidently), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Greene*, 22 F.4th at 606 (quoting *Brawner*, 14 F.th at 597).

Thereafter, *Grote* interpreted the subjective component of the deliberate indifference test in *Greene* to require: "(2) that the defendants, analyzed individually, acted (or failed to act) intentionally

---

[8] There has been much discussion about whether *Brawner* is dicta and the uncertainty created by the test articulated in *Brawner*.  *Brawner v. Scott Cty.*, 14 F.4th 585, 604-05 (6th Cir. 2021); *see also Preston v. Cty. Of Macomb*, No. 18-12158, 2022 U.S. Dist. LEXIS 177535, at *33 (E.D. Mich. Sep. 29, 2022) ("the changed standard outlined in *Brawner* and *Greene* was, to put it lightly, unclear"); *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) ("*Brawner* is far from clear"); *Westmoreland v. Butler Cty.*, 29 F.4th 721, 738-39 (6th Cir. 2022) (dissent by Judge Bush, that the "intentional" component of tests following *Brawner* is unclear); *see also Trozzi v. Lake Cty.*, 29 F.4th 745 (6th Cir. 2022)..

and either ignored the serious medical need or 'recklessly failed to act reasonably to mitigate the risk the serious medical need posed.'"  *Grote v. Kenton Cty.*, 85 F.4th 397, 405 (6th Cir. 2023) (quoting *Greene*, 22 F.4th at 607).  "Stated differently, a pretrial detainee must have a serious medical need, and the defendant must act, whether through intentional action or omission, recklessly in response to the need and risk it presented to the detainee."  *Grote*, 85 F.4th at 405.

Throughout the evolution of the deliberate indifference standard in recent years, it is undisputed there is a subjective component in this test that requires at the very least recklessness.  *See Farmer*, 511 U.S. at 834; *Grote*, 85 F.4th at 405.

2. *The Well-Settled Principles of Deliberate Indifference to the Medical Needs of Pretrial Detainees*

It remains true that pre-*Brawner* cases within the Sixth Circuit remain reliable precedent in the analysis of claims of deliberate indifference to medical needs in a post-*Brawner* world.  *Britt v. Hamilton Cty.*, No. 21-3424, 2022 U.S. App. LEXIS 3852, at *17 (6th Cir. Feb. 10, 2022) (Chief Judge Sutton, in relying upon pre-*Brawner* cases to grant summary judgment under the *Brawner* recklessness standard, soundly noted "[t]hat we relied on pre-*Brawner* cases for other aspects of the deliberate-indifference inquiry is hardly unusual.  What would be unusual would be to assume that *Brawner* overruled all of these cases, even those that dealt with other issues and even those that relied on alternative grounds when they addressed the state-of-mind inquiry."); *see also Cope v. Cogdill*, 3 F.4th 198, 207 n.7 (5th Cir. 2021) (*Kingsley* did not address claims regarding medical treatment and it did not abrogate our deliberate-indifference precedent).

Within this framework, several well-settled principles guide this Court's analysis of Mr. Heiney's claim against Dr. Wilson of deliberate indifference to Mr. Heiney's medical needs.

"[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical

14

judgments and to constitutionalize claims which sounds in state tort law." *Whyde v. Sigsworth*, No. 3:19 CV 683, 2022 U.S. Dist. LEXIS 59014, at *37 (N.D. Ohio Mar. 30, 2022) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)); *see also Helphenstine v. Lewis Cty.*, 60 F.4th 305, 322 (6th Cir. 2023) ("Generally, a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983."). "[A]n inadvertent failure to provide adequate medical care cannot be said to constitute an 'unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; Rouster v. Cty. of Saginaw*, 749 F.3d 437 (6th Cir. 2014) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)) (the test for deliberate indifference to medical needs "is designed 'to prevent the constitutionalization of medical malpractice claims.'").

"'[T]he standard is not whether there is something easy that doctors, with the benefit of hindsight, could have done.' We must judge their actions based on the information that was available to them at the time." *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014). (emphasis added) (internal citations omitted).

The Sixth Circuit identified "two narrow contexts" when a medical professional is deliberately indifferent under the Fourteenth Amendment: "where the professional's medical care was either (1) 'so grossly incompetent' that it 'shock[s] the conscience' or (2) 'so cursory as to amount to no medical treatment at all.'" *Whyde v. Sigsworth*, No. 22-3581, 2024 U.S. App. LEXIS 28501, at *15-16 (6th Cir. Nov. 8, 2024) (quoting *Helphenstine*, 60 F.4th at 322). "Outside these two categories, an inmate's remedy lies in malpractice law, not the federal Constitution." *Whyde v. Sigsworth*, 2024 U.S. App. LEXIS 28501, at *16 (emphasis added).

In short, the deliberate indifference analysis applicable to Dr. Wilson considers only the personal involvement of Dr. Wilson on December 14, 2021 between 10:00 a.m. and 11:00 a.m. during the call with Nurse Agnone, the information communicated to and known by Dr. Wilson at that time, and Dr. Wilson's response to that information by placing Gaven Heiney on an alcohol detox/withdrawal protocol.  Any challenge to the adequacy of the treatment provided by Dr. Wilson, or any claims that rely upon facts not communicated to or known by Dr. Wilson at the time of his involvement, are inapplicable to the analysis and do not rise to the level of a constitutional violation.

3.  *Dr. Wilson Was Not Deliberately Indifferent to Gaven Heiney's Medical Needs on December 14, 2021*

Without waiving any defense on the objective component for deliberate indifference to a medical need, Dr. Wilson's motion focuses on the subjective component of this test.

The facts in this case conclusively establish Dr. Wilson is entitled to summary judgment because no reasonable minds can find Dr. Wilson was deliberately indifferent to the medical needs of Gaven Heiney on December 14, 2021.  This conclusion is supported by numerous cases within the Sixth Circuit with analogous facts.

The recent decisions by the Sixth Circuit and Northern District of Ohio in *Whyde* are directly on point and govern this Court's application of the deliberate indifference standard under both the pre-*Brawner* test and the post-*Brawner* t*est.  Whyde v. Sigsworth*, No. 22-3581, 2024 U.S. App. LEXIS 28501 (6th Cir. Nov. 8, 2024); *Whyde v. Sigsworth*, No. 3:19 CV 683, 2022 U.S. Dist. LEXIS 59014 (N.D. Ohio Mar. 30, 2022).  Both the Sixth Circuit and the Northern District of Ohio granted summary judgment in favor of a jail physician after concluding the physician did not act deliberately indifferent to a pretrial detainee's medical needs.  *Whyde v. Sigsworth*, No. 22-

3581, 2024 U.S. App. LEXIS 28501 (6th Cir. Nov. 8, 2024); *Whyde v. Sigsworth*, No. 3:19 CV 683, 2022 U.S. Dist. LEXIS 59014 (N.D. Ohio Mar. 30, 2022).

In *Whyde*, a pretrial detainee asserted a claim of deliberate indifference, among others, against corrections officers and medical staff at a jail. *Whyde v. Sigsworth*, No. 3:19 CV 683, 2022 U.S. Dist. LEXIS 59014, at *2 (N.D. Ohio Mar. 30, 2022). Once incarcerated, the inmate informed the jail he would withdraw from Opana, Oxycodone (an opiate), and Xanax. *Id.* at *3-4. A nurse's assessment at the jail documents symptoms of "hot and dizzy" with unremarkable vital signs. *Id.* at *5. The nurse called and left a message for the on-call jail physician who subsequently ordered an opiate detoxification protocol. *Id.* at *5. This is the jail physician's only involvement in the inmate's incarceration. *See id.* Thereafter, the inmate reported symptoms of loss of appetite, sweating, hallucinations, difficulty sleeping, and feeling "deathly ill." *Id.* at *6. The inmate was also noted to be agitated, belligerent, and sweaty. *Id.* at *7.

The Northern District of Ohio analyzed the deliberate indifference claim against the jail physician under a post-*Brawner* "reckless disregard" standard. *Whyde v. Sigsworth*, No. 3:19 CV 683, 2022 U.S. Dist. LEXIS 59014, at *20-23 (N.D. Ohio Mar. 30, 2022). The inmate alleged the jail physician was deliberately indifferent to his medical needs "in prescribing an opiate withdrawal protocol without reviewing Plaintiff's medical records or examining him" while he decompensated at the jail. *Id.* at *36. The Court appropriately noted the jail physician only had a single initial conversation with a jail nurse and "only had the information relayed to him" by the nurse. *Id.* at *36, 38 (emphasis added); *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 944 (6th Cir. 2010) (holding the test of deliberate indifference to medical needs is based on information "*communicated to the physician*"); *Graham ex rel. Estate of Graham v. Cnty. Of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) (it is not unconstitutional "to rely on medical judgments made by

medical professionals responsible for prisoner care"); *Galloway v. Anuskiewicz*, 518 F. App'x 350, 225-26 (6th Cir. 2013) (a defendant is "entitled to rely on the mental health staff's assessment" and the information reported by health staff to a defendant).  In *Whyde*, <u>there was no evidence the physician had any awareness of the inmate's ongoing condition beyond the physician's initial conversation with the nurse</u>.  *Whyde v. Sigsworth*, No. 3:19 CV 683, 2022 U.S. Dist. LEXIS 59014, at *38 (N.D. Ohio Mar. 30, 2022); *see also Wiertella v. Lake Cty.*, 2024 U.S. Dist. LEXIS 53247, at *32 (a jail physician was not deliberately indifferent when he was unaware an inmate's medical needs went untreated after the physician prescribed medications, a diabetic diet, and glucose checks.  In response to the information provided by the nurse about opiate use, the physician ordered an opiate detoxification protocol.  *Whyde v. Sigsworth*, 2022 U.S. Dist. LEXIS 59014, at *36.  The fact the jail physician did not know about other medications the inmate was on or investigate the inmate's condition further did not rise to the level of reckless disregard or deliberate indifference to the inmate's medical needs.  *Id.*  at *36-37.

The Northern District of Ohio highlighted several important points that support summary judgment for the jail physician: the act of <u>ordering a withdrawal protocol has not been deemed unconstitutional by law</u>; and <u>prescribing medications without physically examining an inmate or his records has also not been deemed unconstitutional by law</u>.  *Id.* at *37, 39 (emphasis added).  *Whyde* relied on the undisputed precedent in the Sixth Circuit: "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sounds in state tort law."  *Id.* (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

The facts and allegations in *Whyde* are strikingly analogous to the facts and allegations here against Dr. Wilson.  Dr. Wilson had a single instance of involvement, a call with Nurse

Agnone about Mr. Heiney's medical care on December 14, 2021, similar to the single instance of telephonic involvement by the jail physician in *Whyde*.  (**Exhibit D**, at 67:13-69:19); (**Exhibit A**, at 55:20-56:2).  Dr. Wilson's actions during this call must take into account he "only had the information relayed to him" by Nurse Agnone.  *Whyde v. Sigsworth*, No. 3:19 CV 683, 2022 U.S. Dist. LEXIS 59014, at *36 (N.D. Ohio Mar. 30, 2022); (**Exhibit D**, at 67:13-69:19); (**Exhibit A**, at 55:20-56:2).  <u>This is a critical part of the analysis because Dr. Wilson cannot be deliberately indifferent based on information he did not have</u>.  *Jones*, 625 F.3d at 944 (holding the test of deliberate indifference to medical needs is based on information "*communicated to the physician*"); *Greene*, 22 F.4th at 607 (Courts "cannot impute knowledge from one defendant to another," so the Court "must evaluate each defendant individually.") (internal citations and quotations omitted).  The information Dr. Wilson had during the call with Nurse Agnone is consistent with Mr. Heiney withdrawing from alcohol.  (**Exhibit D**, at 69:20-70:2) ((**Exhibit A**, at 54:7-24).  In response to the information Dr. Wilson had about Mr. Heiney withdrawing from alcohol, Dr. Wilson appropriately placed Mr. Heiney on the alcohol withdrawal protocol to address Mr. Heiney's symptoms and withdrawal, the same way the physician in *Whyde* placed the inmate on opiate withdrawal protocol.  (**Exhibit D**, 61:4-6) (**Exhibit A**, at 56:3-6).

Ordering the withdrawal protocol for Mr. Heiney based on his history, self-report of withdrawal, and symptoms does not equate to ignoring Mr. Heiney's medical needs nor does it amount to reckless disregard as required under the post-*Brawner* test.  *See Whyde v. Sigsworth*, 2022 U.S. Dist. LEXIS 59014.  In fact, *Whyde* is clear: Dr. Wilson does not satisfy the "reckless disregard" component of the test for deliberate indifference.  *Id.*  This conclusion remains true even if Dr. Wilson did not examine Mr. Heiney or review his medical records during his incarceration, because <u>ordering a withdrawal protocol</u> and <u>prescribing medications without</u>

physically examining an inmate or his records has not been deemed unconstitutional by law. *Id.* at \*36-39. Nor should it be deemed unconstitutional in this case, as such a conclusion is inconsistent with established precedent within the Sixth Circuit.

Summary judgment in favor of Dr. Wilson is also supported by the Sixth Circuit's analysis in *Whyde* under the pre-*Brawner* test. *Whyde v. Sigsworth*, No. 22-3581, 2024 U.S. App. LEXIS 28501 (6th Cir. Nov. 8, 2024).[9] The Sixth Circuit explained "[t]reating [the inmate] by administering that medication was a reasonable medical judgment that we are 'reluctant to second guess.'" *Id.* at \*14 (quoting *Griffith v. Franklin County*, 975 F.3d 554 (6th Cir. 2020)) (emphasis added); *see Briggs v. Oakland Cty.*, 213 F. App'x 378 (6th Cir. 2007) (concluding there was no deliberate indifference to the medical needs of pretrial detainee who was diagnosed with heroin withdrawal and treated at the jail with medications); *Davis v. Oakland Cty.*, NO. 96-1678, 1998 U.S. App. LEXIS 7172 (6th Cir. Apr. 7, 1998) (medical staff were not deliberately indifference to the medical needs of a prisoner because the proper medications were prescribed to treat the diagnosed condition, although there was a misdiagnosis); *Baker v.* Stevenson, 605 F. App'x 514, 519 (6th Cir. 2015) (The Supreme Court and the Sixth Circuit have rejected deliberate indifference claims that second-guess the medical judgments of medical personnel.). "[T]he severity of the [symptoms], the degree to which to which the [symptoms] should have been treated with drugs, and the particular drugs used to treat them are all medical judgments best left to doctors, not judges." *Whyde v. Sigsworth*, No. 22-3581, 2024 U.S. App. LEXIS 28501, at \*15 (6th Cir. Nov. 8, 2024). As the Sixth Circuit aptly stated: "For a deliberate-indifference claim, it's the doctor's judgment that counts—not the patient's desires. The Constitution gives inmates a right to be free

---

[9] On appeal, the Sixth Circuit in *Whyde* analyzed the deliberate indifference claims under a pre-*Brawner* analysis based on the holding in *Lawler* because the conduct in *Whyde* occurred in 2017 prior to *Brawner*. *Whyde v. Sigsworth*, No. 22-3581, 2024 U.S. App. LEXIS 28501, at \*6-9 (6th Cir. Nov. 8, 2024) (citing *Lawler v. Hardeman County*, 93 F.4th 919 (6th Cir. 2024).

from deliberate indifference to their medical needs, but not a right to receive any particular treatment or desired medication." *Id.* at *16-17.

Moreover, <u>ordering medications under a withdrawal protocol is not "so obviously deficient" to place an inmate at risk</u>. *Id.* at *15 (emphasis added).  This is because "'[e]fforts to <u>wean a prisoner off opiate or narcotic pain medication to which he has become addicted</u>'" **do not qualify as deliberate indifference**." *Id.* at *16 (quoting *Baker v.* Stevenson, 605 F. App'x 514, 519 (6th Cir. 2015) (emphasis added).

The Sixth Circuit identified "two narrow contexts" when a medical professional is deliberately indifferent: "where the professional's medical care was either (1) 'so grossly incompetent' that it 'shock[s] the conscience' or (2) 'so cursory as to amount to no medical treatment at all.'" *Whyde v. Sigsworth*, No. 22-3581, 2024 U.S. App. LEXIS 28501, at *15-16 (6th Cir. Nov. 8, 2024) (quoting *Helphenstine*, 60 F.4th at 322).  "Outside these two categories, an inmate's remedy lies in malpractice law, not the federal Constitution." *Whyde v. Sigsworth*, 2024 U.S. App. LEXIS 28501, at *16.  Neither narrow context was presented in *Whyde*. *See id.*  The jail physician "*did* treat [the inmate's] opioid withdrawal: he prescribed a program of opioid-withdrawal medications designed to remedy the exact issue." *Id.* at *17 (emphasis in original).  This does not amount to ignoring the inmate's need for treatment and, thus, the jail physician was entitled to summary judgment. *Id.* at *17-18.

So too here.  Dr. Wilson <u>did</u> treat Mr. Heiney's withdrawal symptoms by prescribing a program of withdrawal medications (a benzodiazepine (Ativan), thiamine, and a multivitamin) designed to treat the alcohol withdrawal.  (**Exhibit D**, at 62:8-10) ("If somebody is suffering from alcohol withdrawal, then benzodiazepine is a treatment of choice.").  Dr. Wilson's order for these medications under a withdrawal protocol is not "<u>so obviously deficient</u>," because it is Dr. Wilson's

21

sound medical judgment to treat alcohol withdrawal with benzodiazepine.  Further, Dr. Wilson's efforts to assist Mr. Heiney wean off an addictive substance, alcohol, does "not qualify as deliberate indifference."  *Whyde v. Sigsworth*, 2024 U.S. App. LEXIS 28501, at *15-16.  The circumstances with Dr. Wilson fall nowhere near the two narrow contexts of deliberate indifference by a medical provider identified in *Whyde* because Dr. Wilson's involvement is neither grossly incompetent to shock the conscience nor is it so cursory as to amount to no medical treatment at all.  Dr. Wilson placed Mr. Heiney on alcohol withdrawal protocol using sound medical judgment based on his experience treating withdrawal and Mr. Heiney's history, symptoms, and vitals were all consistent with alcohol withdrawal.  The only reasonable conclusion under the facts here, entirely consistent with the facts and analysis in *Whyde*, is Dr. Wilson did not act with reckless disregard and Dr. Wilson is entitled to summary judgment.

Further illustrative of the reasonableness of Dr. Wilson's actions is *Winkler*.  *Winkler v. Madison Cty.*, 893 F.3d 877 (6th Cir. 2018).  In *Winkler*, a pretrial detainee asserted a deliberate indifference claim against a detention center, contract physician, and other medical staff, among others.  *Winkler*, 893 F.3d at 885.  The physician covered 24/7 call and would address inmate medical needs over the phone with the medical staff at the jail based on information gathered and relayed by nurses.  *Id.* at 885-86.  While incarcerated, the evidence demonstrated the inmate reported feeling "very sick," requested "stomach meds," was suffering from "active tremors, body aches, [and] sweats," complained of "being shaky and having chills, as well as having an upset stomach."  *Id.* at 886.  The inmate also reported he was withdrawing from heroin.  *Id.*  The jail nurse could not get ahold of the contract physician, so the nurse called a nurse practitioner who prescribed medications for "possible withdrawal of heroin."  *Id.*  Neither the nurse nor nurse practitioner inquired into the frequency of heroin use nor amount ingested, which was a violation

of the jail's policy.  *Id.*  Nor did the nurses obtain a drug screening to confirm the self-report of heroin withdrawal.  *Winkler*, 893 F.3d at 885-86.  After these events, the inmate's "condition deteriorated."  *Id.* at 887.  Another inmate observed the plaintiff and described how he "looked sick," and "somethings killing [the plaintiff]."  *Id.*  The inmate's girlfriend visited the inmate in the jail and described him as "deathly ill" and "looked real bad."  *Id.*  The inmate was unable to keep anything down, had trouble breathing, and had stomach problems.  *Id.*  After these events, the contract physician was called and notified about the inmate's condition and his vital signs.  *Winkler*, 893 F.3d at 888.  The physician ordered medications.  *Id.*  The contract physician was called a second time the same day and provided with the inmate's report that he "felt like he was bleeding on the inside."  *Id.*  In response, the contract physician did not provide any specifics about how to monitor the inmate and the physician did not change the treatment plan.  *Id.*  The contract physician was contacted again the following day about the inmate's inability to keep food down and appearance of pale, weak, and sweaty.  *Id.* at 889.

The Sixth Circuit upheld summary judgment on the constitutional claims against the nurse practitioner and jail physician concluding, "the record would not support a findings that the defendants were deliberately indifferent to [the inmate's] serious medical needs."  *Winkler*, 893 F.3d at 890.  The nurse practitioner was called once about the inmate and "determined that [the inmate] was likely suffering from opiate withdrawal and ordered that he be provided with medications intended to treat both the withdrawal and his high blood pressure."  *Id.* at 891.  The Court explained the nurse practitioner "believed, based on the information provided to her (including [the inmate's] self-reports), that [the inmate] was suffering solely from opiate withdrawal," and the nurse practitioner then prescribed medication to treat that condition.  *Id.* at 892.  This was sufficient evidence to affirm summary judgment in favor of the nurse practitioner

23

because "her actions do not suggest deliberate indifference to a known risk to [the inmate's] health." *Id.* at 892. In reaching this decision, the Court relied on well-settled precedent that "[c]ourts are generally reluctant to second guess the medical judgment of prison officials." *Id.* (quoting *Rouster*, 749 F.3d at 448).

The facts and analysis involving the nurse practitioner in *Winkler* present a similar situation to Dr. Wilson's single instance of involvement over the phone. It was reasonable for the nurse practitioner in *Winkler* to rely on the self-reports by the inmate about withdrawal and prescribe medications to treat withdrawal, just as it was reasonable for Dr. Wilson to rely on Gaven Heiney's self-reports of withdrawal and to rely on the information provided by Nurse Agnone, and then prescribe the withdrawal protocol. *Winkler*, 893 F.3d at 892; *see also Wiertella v. Lake Cty.*, 2024 U.S. Dist. LEXIS 53247 (a jail physician's single instance of involvement to prescribe medication, a diabetic diet, and glucose checks, was not deliberately indifferent, and the physician can rely on the nurses at the jail to relay information about an inmate's medical condition). Dr. Wilson's acts, just as the acts of the nurse practitioner in *Winkler*, "do not suggest deliberate indifference to a known risk to [Mr. Heiney's] health" under a recklessness standard. *See Winkler*, 893 F.3d at 892.

*Britt* is another analogous example of summary judgment for a healthcare provider under the post-*Brawner* recklessness standard in a pretrial detainee's claim of deliberate indifference to his medical needs while withdrawing. *Britt v. Hamilton Cty.*, No. 21-3424, 2022 U.S. App. LEXIS 3852 (6th Cir. Feb. 10, 2022). The inmate disclosed heroin, benzodiazepines, and alcohol use, with heroin use the day before arrest, and complained of severe pain and withdrawal symptoms, including nausea, vomiting, and diarrhea. *Id.* at *3-4. The inmate was placed on the detox protocol at the jail by the nurse. *Id.* at *3. A physician was called and placed the inmate on suicide watch,

with every ten-minute monitoring.  *Id.*[10]  The Court held the nurse was not deliberately indifferent to the medical needs of the inmate because the inmate's symptoms were consistent with withdrawal and the nurse responded to those symptoms by placing the inmate on withdrawal protocol.  *Id.* at *8-14.

Notably, the inmate's symptoms in *Britt*, severe pain, vomiting, and diarrhea, are more severe symptoms then Mr. Heiney's symptoms of shaking, sweating, and nausea at the time of Dr. Wilson's involvement.  Regardless, Dr. Wilson took the same actions as the nurse in *Britt*, even with Mr. Heiney's less severe symptoms, by placing Mr. Heiney on withdrawal protocol.  Thus, Dr. Wilson was not reckless and he is entitled to summary judgment under the post-*Brawner* analysis in *Britt*.

In *Rouster*, the Sixth Circuit affirmed summary judgment in favor of medical staff on a claim of deliberate indifference to the medical needs of a pretrial detainee.  *Rouster v. Cty. of Saginaw*, 749 F.3d 437 (6th Cir. 2014).  A pretrial detainee was withdrawing from alcohol, laid on the floor of his cell, complained of stomach pain, was pale and agitated, vomited, had diarrhea and tremors, and engaged in bizarre behaviors.  *Id.* at 441-43.  A nurse called the on-call jail physician, who placed the inmate on withdrawal protocols, which includes prescription medication.  *Id.* at 442.  The on-call physician had no other involvement in the inmate's care and the physician did not personally see the inmate.  *Id.*[11]

---

[10] The inmate initially asserted a deliberate indifference claim against the physician, but ultimately abandoned the claim against the physician.  *Britt v. Hamilton Cty.*, No. 21-3424, 2022 U.S. App. LEXIS 3852, at *10 (6th Cir. Feb. 10, 2022).  Presumably, this is because the inmate recognized he could not prevail on these claims.  This is telling because Dr. Wilson's single instance of involvement is similar to, albeit more responsive to Mr. Heiney's medical needs, than the response provided by the physician in *Britt.*

[11] The deliberate indifference claims against the physician were abandoned.  *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 444 (6th Cir. 2014).  Presumably, this is because the inmate recognized he could not prevail on such a claim based on the single instance of involvement of the on-call physician.

The Sixth Circuit's analysis of the deliberate indifference claim against the nurse examined the information available to the nurse at the time of the nurse's involvement, and the nurse's response to that information. *Rouster*, 749 F.3d at 447. The nurse knew the inmate complained of abdominal cramping, displayed abdominal guarding, had diarrhea, vomited, eaten leftover food from the floor, and drank from the toilet. *Id.* The nurse also knew the inmate was "visibly ill" and "it was pretty obvious that [he] wasn't getting better but getting worse." *Id.* at 450. The nurse concluded the inmate was suffering from "gas and diarrhea," and treated him accordingly with over-the-counter medication and relocated the inmate to an observation cell. *Id.* at 448-49. The nurse was not deliberately indifferent for not doing more because the inmate was already being treated with withdrawal protocols and the inmate's symptoms were consistent with withdrawal. *Id.* at 450-51.

In affirming summary judgment for the nurse, the Sixth Circuit concluded the nurse assessed the inmate's symptoms, and although she misdiagnosed the symptoms, she provided some level of treatment in response to the inmate's complaints. *Rouster*, 749 F.3d at 450-51. The misdiagnosis was the result of the medical judgment of the nurse, which "[C]ourts are generally reluctant to second guess." *Id.* (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 944 (6th Cir. 2010)); *see also Jones*, 625 F.3d at 945 ("[N]egligence in diagnosing a medical condition does not constitute unconstitutional deliberate indifference."). The Sixth Court noted the nurse could have done more by notifying the on-call physician, but the nurse "clearly took appropriate steps to protect [the inmate]," which supported summary judgment in her favor. *Rouster*, 749 F.3d at 449.

In analyzing the treatment of another nurse in *Rouster*, the Sixth Circuit affirmed summary judgment for that nurse as well because the nurse reasonably concluded the inmate's symptoms

could be explained by alcohol withdrawal, and took the appropriate steps to provide treatment, including calling a physician and placing the inmate on withdrawal protocol. *Id.* at 452.

Here, Dr. Wilson was provided with Mr. Heiney's self-reports of withdrawal, his symptoms which are consistent with alcohol withdrawal, and his vitals at that time which are also consistent with alcohol withdrawal. (**Exhibit D**, at 69:20-70:2); (**Exhibit A**, at 54:7-18). Dr. Wilson responded to this information by placing Mr. Heiney on the alcohol withdrawal protocol. (**Exhibit D**, 61:4-6); (**Exhibit A**, at 56:3-6). This serious of events is analogous with the actions of a nurse in *Rouster* whose conduct was not reckless and was not deliberately indifferent to the inmate's medical needs. Likewise, Dr. Wilson was not reckless, he was not deliberately indifferent, and Dr. Wilson's conduct was not a constitutional violation.

An important well-settled principle in the analysis of claim of deliberate indifference to an inmate's medical needs is that courts "must 'evaluate each defendant individually.'" *Greene*, 22 F.4th at 607 (quoting *Speers v. County of Berrien*, 196 F. App'x 390, 394 (6th Cir. 2006); *Whyde v. Sigsworth*, No. 3:19 CV 683, 2022 U.S. Dist. LEXIS 59014, at *23 (N.D. Ohio Mar. 30, 2022). In other words, courts "must judge [the defendant's] actions based on the information that was available to them at the time." *Rouster*, 749 F.3d at 453; *see also Bryant v. Hensley*, No. 23-5608, 2024 U.S. App. LEXIS 6750, at *7 (6th Cir. Mar. 19, 2024) (Courts are hesitant to say a defendant subjectively perceived a risk when the defendant did not receive information of other serious medical needs); *Clark-Murphy v. Foreback*, 439 F.3d 280, 291 (6th Cir. 2006) (finding officers were not deliberately indifferent because they were not aware an inmate was not drinking or eating, and the officers had no reason to think other officers, who had more information about the inmate, were not treating the inmate). "'[T]he standard is not whether there is something easy that doctors, with the benefit of hindsight, could have done.'" *Rouster*, 749 F.3d at 453 (quoting *Williams v.*

*Mehra*, 186 F.3d 685, 692 (6th Cir. 1999).  In applying these principles, the Sixth Circuit in *Rouster* held the nurse "did not provide constitutionally deficient treatment by failing to address pain of which she was not aware."  *Rouster*, 749 F.3d at 449 (emphasis added).

Here, Dr. Wilson cannot be deliberately indifferent to Mr. Heiney's medical condition after December 14, 2021, of which Dr. Wilson was not aware.  The analysis applicable to Dr. Wilson is limited to the information he had during the call with Nurse Agnone on December 14, 2021 between 10:00 a.m. and 11:00 a.m.  The reliable precedent in the Sixth Circuit, as set forth above, unambiguously establish Dr. Wilson did not act deliberately indifferent to Mr. Heiney's medical needs on December 14, 2021, based on the information provided to Dr. Wilson.  The events that subsequently occurred after Dr. Wilson was called are inapplicable to this analysis because Dr. Wilson did not have this information and the deliberate indifference analysis is devoid of hindsight and imputing knowledge of others to Dr. Wilson.

Accordingly, Dr. Wilson <u>did</u> respond to Mr. Heiney's medical needs by placing him on the alcohol withdrawal protocol, and Dr. Wilson made this sound medical decision based on his medical judgment of the information provided during his call with Nurse Agnone, all of which was consistent with alcohol withdrawal.  Dr. Wilson's order of medications to help with this withdrawal does not amount to a reckless disregard for Mr. Heiney's medical needs, and does not rise to the level of deliberate indifference.  Thus, Dr. Wilson is entitled to summary judgment on Plaintiff's allegations of constitutional violations by Dr. Wilson.

### 4. *Dr. Wilson Is Not Liable Under a Theory of Failure to Supervise or Train*

It is unclear from Plaintiff's First Amended Complaint, whether Plaintiff's constitutional claims against Dr. Wilson are premised on a theory of failure to supervise or train.  (See ECF No. 41).  Regardless, Dr. Wilson is not liable in his individual capacity on this theory.

It is undisputed Dr. Wilson was not responsible for and he was not involved in training the nurses at the Jail.  (**Exhibit A**, at 115:13-17); (**Exhibit B**, at 104:16-22).  It is also undisputed the supervisor of the nurses at the Jail was the Health Service Administrator, Laura Zuch-Battaglia, RN. (**Exhibit A**, at 18:12-16) (**Exhibit C**, at 15:20-16:2).  Dr. Wilson did not supervise the nurses' administration of medications to Mr. Heiney because the nurses are qualified to do this and are authorized to administer medications by the State of Ohio with their nursing licenses.  (**Exhibit D**, at 44:4-13); (**Exhibit A**, at 55:16-19; 105:16-19).  Dr. Wilson also did not supervise the care provided to Mr. Heiney by the nurses after the withdrawal protocol was started because Dr. Wilson was never notified about Mr. Heiney's medical condition during this time.  (**Exhibit D**, at 44:19-45:1).  Thus, there is no evidence Dr. Wilson supervised or trained the medical staff's care of Mr. Heiney.

A failure to supervise or train claim against Dr. Wilson, if any, cannot be asserted against Dr. Wilson in his individual capacity.  *Harvey v. Campbell Cty.*, 453 F. App'x 557, 563 (6th Cir. 2011) (Attempts to hold defendants liable in their individual capacities for their alleged failure to adequately train employees "improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability."); *Arrington-Bey v. City of Bedford Heights*, No. 14 CV 2514, 2016 U.S. Dist. LEXIS 27105, at *74 (N.D. Ohio Mar. 3, 2016) (the Sixth Circuit has consistently held "a defendant cannot be held liable in his individual capacity for the alleged failure to adequately train employees"); *Reid v. Scott Cty. Det. Ctr.*, No. 5:23-CV-201-KKC, 2024 U.S. Dist. LEXIS 165201, at *8 (E.D. Ky. Sep. 13, 2024) (individual defendants cannot be liable in their individual capacities under § 1983 for failure to train).  Such a claim is interpreted as a claim against their official capacity.  *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) (failure-to-train claims against individual defendants are properly deemed brought against them in

their official capacities, to be treated as claims against the county). An official capacity claim is "'another way of pleading an action against an entity of which an officer is an agent.' . . . [A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989).

Accordingly, there is not a cognizable constitutional claim against Dr. Wilson in his individual capacity for failure to supervise or train anyone at the Jail.

C. **Plaintiff's Second, Fourth, and Sixth Claims for Relief Are Pendent State Law Claims That Fail as a Matter of Law**

1. *Plaintiff's Second, Fourth, and Sixth Claims for Relief Are All State Law Medical Claims Under Ohio Law, O.R.C. § 2305.113(E)(3)*

All Plaintiff's non-constitutional claims (Plaintiff's Second, Fourth, and Sixth Claims for Relief) against Dr. Wilson are "medical claims" under Ohio law, as defined by O.R.C. § 2305.113(E)(3): "[A]ny claim that is asserted in any civil action against a physician . . . and that arises out of the medical diagnosis, care, or treatment of any person." "Medical claim" also includes allegations related to acts or omissions that are "ancillary to and an inherently necessary part" of medical diagnosis, care, or treatment. *Rome v. Flower Mem. Hosp.* 70 Ohio St.3d 14, 16, 1994-Ohio-574, 635 N.E.2d 1239.

"The term 'medical claim' as defined in R.C. 2305.113(E)(3) has two components that the statute states in the conjunctive; (1) the claim is asserted against one or more of the specifically enumerated medical providers and (2) the claim arises out of medical diagnosis, care, or treatment." *Chalmers v. HCR ManorCare, Inc.*, 2017-Oho-5678, 93 N.E.3d 1237, ¶ 25 (6th Dist.).

Here, the first element of a medical claim is established as Plaintiff's Second, Fourth, and Sixth Claims for Relief are asserted against Dr. Wilson, who is a physician licensed to practice

medicine in the State of Ohio.  (**Exhibit D**, at 6:10-16); *St. John v. Bosley, Inc.,* 481 F. App'x 988, 990 (6th Cir. 2012) ("doctors are expressly covered under section 2305.113(E)(3)").

As it relates to the second element, it is apparent from the face of Plaintiff's First Amended Complaint the nature and subject matter of Plaintiff's claims against Dr. Wilson arise out of medical care and treatment Gaven Heiney received, or allegedly did not receive, while incarcerated in the Columbiana County Jail in December 2021.  (ECF No. 41, at ¶ 41).  In fact, Plaintiff's Second Claim for Relief (Professional Negligence) contains specific language related to medical claims such as an alleged failure to "meet acceptable standards of care in providing safe and adequate medical care and treatment to Heiney."  (ECF No. 41, at ¶ 55) (emphasis added).  Plaintiff details eight different alleged failures, each of which specifically involves Mr. Heiney's medical condition, or medical care and treatment of Mr. Heiney.  (ECF No. 41, at ¶57(a)- (h)).

Plaintiff's Fourth Claim for Relief (Negligence) contains similar medical care related allegations involving failing to train individuals to "perform medical services," failing to provide "appropriate medical care, treatment," and "failing to afford him adequate medical care and treatment."  (ECF No. 41, at ¶72, 77).  The Fourth Claim for Relief falls squarely within the definition of a medical claim under O.R.C. § 2305.113(E)(3)(c)(ii): "claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment."  The Northern District of Ohio has concluded claims labeled as "negligence" which arise out of medical care and treatment are still "medical claims" under Ohio law. *See, e.g.*, *Russell v. Witham*, No. 1:07 CV 2890, 2007 U.S. Dist. LEXIS 93958, at *12-17 (N.D. Ohio Dec. 20, 2007).

Plaintiff's Sixth Claim for Relief (Intentional and Negligent Infliction of Emotional Distress) also contains analogous allegations involving the medical care and treatment, or omission

of medical care and treatment, provided to Gaven Heiney.  (ECF No. 41, at ¶85) ("Defendants intentionally and/or negligently inflicted emotional distress on Heiney by . . . denying him needed medical care and treatment . . . .").  The Northern District of Ohio has concluded claims labeled as Intentional Infliction of Emotional Distress are still "medical claims" as defined in O.R.C. § 2305.113(E)(3).  *Armatas v. Aultman Health Found.*, No. 5:19-cv-00349, 2019 U.S. Dist. LEXIS 229529, at *32-36 (N.D. Ohio Dec. 19, 2019) (citing *Crissinger v. The Christ Hosp.*, 2017- Ohio 9256, 106 N.E.3d 798, 804 (Ohio App. Ct. 2017); *Singh v. Cleveland Clinic Found.*, 2013-Ohio-2465, 2013 Ohio App. LEXIS 2411, * 4-7 (Ohio App. Ct. June 13, 2013); *Butler v. Jewish Hosps.*, 1995 Ohio App. LEXIS 1787, * 2-3 (Ohio App. Ct. May 3, 1995)).

There can be no dispute Plaintiff's Second Claim for Relief (Professional Negligence), Fourth Claim for Relief (Negligence), and Sixth Claim for Relief (Intentional and Negligent Infliction of Emotional Distress) are all state law "medical claims" arising from the medical care and treatment provided to, or allegedly not provided to, Gaven Heiney while incarcerated.

### 2. *Dr. Wilson Did Not Have a Doctor-Patient Relationship with Gaven Heiney*

Alternatively, setting the above constitutional arguments aside, there is precedent within the Sixth Circuit and Ohio state courts that Dr. Wilson did not have a doctor-patient relationship with Gaven Heiney.

"The existence of a duty is an essential element of proof in a medical malpractice claim." *Montgomery v. Ohio State Univ.*, 10th Dist. Franklin No. 11AP01024, 2012-Ohio-5489, ¶ 21. (Internal quotations omitted).  "The duty owed by a physician is predicated on the existence of a physician-patient relationship." *Id.*

In a similar scenario as presented here, the Northern District of Ohio concluded there is no doctor-patient relationship. *Stefan v. Olson*, No. 1:10 CV 671, 2011 U.S. Dist. LEXIS 71761 (N.D.

Ohio July 5, 2011)[12]; *see also Arrington-Bey v. City of Bedford Heights*, 2016 U.S. Dist. LEXIS 27105 (reversed on other grounds in *Arrington-Bey v. City of Bedford Hts.*, 858 F.3d 988 (6th Cir. 2017).    Another District Court also reached a similar conclusion in analyzing an alleged constitutional violation of deliberate indifference.  *Wong v. Wong*, No. 14-cv-04760-JST (PR), 2015 U.S. Dist. LEXIS 51087, at *5 (N.D. Cal. Apr. 17, 2015) (finding no doctor-patient relationship so there could not be a deliberate indifference claim against an outside physician who allegedly did not see an inmate in a timely manner).

In *Stefan*, a doctor-medical director of a jail never met a pretrial detainee, and the physician did not know who the inmate was by name until after the incident at issue.  *Stefan v. Olson*, 2011 U.S. Dist. LEXIS 71761, at *57.  The inmate arrived at the Richland County Jail and reported he would go through alcohol withdrawal and have seizures.  *Id.* at *6.  The Richland County Jail had an alcohol withdrawal protocol, which included various medications.  *Id.* at *7.  The consent of the jail's medical director, an independent contractor, was required to begin the withdrawal protocol and administer medications to an inmate.  *Id.* at *9.  Judge Polster concluded there was not a doctor-patient relationship between the jail's medical director and the inmate because the jail medical director "never met [the inmate] and did not even know who [the inmate] was until long after" the incarceration.  *Id.* at *57.

The Northern District of Ohio reached the same conclusion in *Arrington-Bey* when Judge Gaughan concluded there was not a doctor-patient relationship between a defendant-medical director of a jail and a pretrial detainee, when the physician was not aware who the pretrial detainee was until after his death.  *Arrington-Bey v. City of Bedford Heights*, 2016 U.S. Dist. LEXIS 27105,

---

[12] There was a single appeal of the Northern District Court of Ohio's denial of a defendant-nurse's claim of immunity, which is unrelated to the District Court's grant of summary judgment in favor of the defendant-medical director.  *See Stefan v. Olson*, 497 F. App'x 568 (6th Cir. 2012).

at *74.  Judge Gaughan agreed with Judge Polster's analysis in *Stefan* and concluded there was not a doctor-patient relationship in *Arrington-Bey*.  *Id.* at *79.

Here, Dr. Wilson never met Gaven Heiney and was not aware who Gaven Heiney was by name until after Mr. Heiney's incarceration ended.  (**Exhibit D**, at 27:15-28:5; 76:17-24) (Text messages produced by Dr. Wilson about Gaven Heiney do not begin until December 24, 2021, after the incarceration at issue ended).  This is similar to the facts in *Stefan* and *Arrington-Bey*.

Without the existence of a doctor-patient relationship between Dr. Wilson and Gaven Heiney, Plaintiff is unable to establish a prima facie case of a state law medical negligence claim.  *Stefan v. Olson*, 2011 U.S. Dist. LEXIS 71761; *Arrington-Bey v. City of Bedford Heights*, 2016 U.S. Dist. LEXIS 27105, at *74.  Moreover, the absence of a doctor-patient relationship has extended into the analysis of claims of constitutional violations of deliberate indifference.  *See Wong v. Wong*, 2015 U.S. Dist. LEXIS 51087.  Thus, the finding of a lack of a doctor-patient relationship between Dr. Wilson and Gaven Heiney also supports summary judgment in favor of Dr. Wilson on the claim of deliberate indifference under the Fourteenth Amendment.

### 3. *Plaintiff's Medical Claims Are Time-Barred by the One-Year Statute of Limitations Under O.R.C. § 2305.113(A)*

Any medical claim based or grounded on insufficient, inadequate, substandard, or total lack of medical attention is subject to the one-year statutory time limitation found in O.R.C. § 2305.113(A).  *Bell v. Ohio Dep't of Rehab. & Corr.*, 128 Ohio Misc.2d 4, 6, 2004-Ohio-2627, ¶ 4 (Ct. of Cl.).[13]

---

[13] Despite the fact Plaintiff asserts his medical claims in federal court, the one-year statute of limitations under O.R.C. § 2305.113(A) applies to these medical claims.  *See, e.g.*, *Russell v. Witham*, No. 1:07 CV 2890, 2007 U.S. Dist. LEXIS 93958, at *12-17 (N.D. Ohio Dec. 20, 2007); *Armatas v. Aultman Health Found.*, No. 5:19-cv-00349, 2019 U.S. Dist. LEXIS 229529, at *32-36 (N.D. Ohio Dec. 19, 2019).

Medical claims accrue and "the statute of limitations commences to run (a) when the patient discovers, or in the exercise of reasonable care and diligence should have discovered the resulting injury or (b) when the physician-patient relationship for that condition terminates, *whichever occurs later*." *St. John v. Bosley, Inc.,* 481 F. App'x 988, 990 (6th Cir. 2012) (quoting *Frysinger v. Leech*, 32 Ohio St.3d 38, 512 N.E.2d 337, 341 (1987)) (emphasis in original).

The last date of treatment a patient has with a medical provider establishes the end of the doctor-patient relationship for purposes of calculation of the statute of limitations.  *See, e.g.*, *Wells v. Johenning*, 63 Ohio App. 3d 364, 367, 578 N.E.2d 878, 880 (1989); *Montanez v. Metrohealth Med. Ctr.*, 8th Dist. Cuyahoga No. 92567, 2009-Ohio-3881, ¶ 16; *St. John*, 481 F. App'x at 990 (citing *Frysinger v. Leech¸*32 Ohio St. 3d 38, 512 N.E.2d 337, 341 (Ohio 1987)).

The only evidence of Dr. Wilson's involvement in this case occurred on a single instance on December 14, 2021.  (**Exhibit A**, at 55:20-56:9); (**Exhibit D**, at 51:5-16).  Thus, assuming the existence of a doctor-patient relationship, Mr. Heiney's claims against Dr. Wilson accrued on December 14, 2021, and the one-year statute of limitations applicable to Mr. Heiney's medical claims against Dr. Wilson expired on December 14, 2022.

Mr. Heiney did not file his medical claims against Dr. Wilson until July 3, 2023, more than one year after the statute of limitations expired on December 14, 2022.  Thus, Mr. Heiney's medical claims against Dr. Wilson are time-barred by O.R.C. § 2305.113(A).

Since Dr. Wilson was not named in the original Complaint, but was added as a new party later in this case, it is important to note Fed. R. Civ. P. 15 does not allow relation back in this case.

"Rule 15(c) is inapplicable when the plaintiff seeks to *add*, rather than subtract or change, the named defendants."  *Rayfield v. City of Grand Rapids*, 768 F. App'x 495, 502 (6th Cir. 2019) (Emphasis in original); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) ("Sixth Circuit

precedent clearly holds that new parties may not be added after the statute of limitations has run and [] such amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)(3)(B).") (citations omitted).  Adding two new parties does not invoke the relation back under Fed. R. Civ. P. 15(c).  *McKernan v. City of Seven Hills*, No. 1:20-CV-00032-PAB, 2023 U.S. Dist. LEXIS 60452, at *15-16 (N.D. Ohio Apr. 4, 2023).

Here, Dr. Wilson was not named in Plaintiff's Complaint.  (ECF No. 1).  Dr. Wilson was not substituted for a previously named party in Plaintiff's First Amended Complaint.  (ECF No. 41).  Dr. Wilson was added as a new party to this action in Plaintiff's First Amended Complaint. (*Id.*); (ECF No. 33, at ¶12) ("The parties further wish to bring to the Court's attention that at least two other parties have been identified since the filing of the Complaint.  Plaintiff will seek to amend the Complaint to add these parties and add an additional claim for relief.") (emphasis added).

The addition of Dr. Wilson as a new party to this action occurred on July 3, 2023, after the one-year statute of limitations applicable to Mr. Heiney's medical claims expired on December 14, 2022.  Therefore, the addition of Dr. Wilson as a new party after the statute of limitations expired does not comport with Fed. R. Civ. P. 15(c), such that Plaintiff's medical claims against Dr. Wilson do not relate back to the timing of the original Complaint and are time-barred.

### D.  Plaintiff's Seventh Claim for Relief Is Withdrawn Against Dr. Wilson

Plaintiff's spoliation claim is a state law claim governed by Ohio law, which requires elements of "(3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendants' acts."  *Smith v. Howard Johnson Co.*, 67 Ohio St.3d 28, 29, 615 N.E.2d 1037 (1993).

Plaintiff's First Amended Complaint is devoid of any factual allegations specific to Dr. Wilson's involvement in spoliation of evidence on these elements.  (ECF. No. 41).  Further, there are no facts to support Dr. Wilson had any involvement with the facts giving rise to Plaintiff's spoliation claim.  Accordingly, Plaintiff, by and through his counsel, agrees to withdraw this claim against Dr. Wilson.  Thus, Dr. Wilson's Motion is unopposed on this claim.

## V.    CONCLUSION

As set forth above, the facts conclusively establish Dr. Wilson had a single instance of involvement with Gaven Heiney's medical care on December 14, 2021, between 10:00 a.m. and 11:00 a.m. during Gaven Heiney's incarceration at the Columbiana County Jail.  The analysis of the deliberate indifference claim against Dr. Wilson considers only the involvement of Dr. Wilson and the information Dr. Wilson had at the time of his involvement.  The decision by Dr. Wilson to prescribe Mr. Heiney medications for alcohol withdrawal pursuant to the protocol at the Jail is not reckless, it is not deliberate indifference, and it is not unconstitutional.  There are numerous analogous situations cited in this Memorandum where the Sixth Circuit and Northern District of Ohio both hold the medical care provided by Dr. Wilson does not satisfy the deliberate indifference standard.  This binding precedent entitles Dr. Wilson to summary judgment here.

The facts and law also establish there is not a cognizable constitutional claim against Dr. Wilson for any alleged failure to supervise or train, and such a theory cannot be asserted against Dr. Wilson in his individual capacity.

The remaining claims (Second, Fourth, and Sixth Claims for Relief) against Dr. Wilson are all state law medical claims, under O.R.C. § 2305.113, which fail as a matter of law.

Finally, Dr. Wilson's Motion is unopposed on the Seventh Claim for Relief.

Therefore, Dr. Wilson is entitled to summary judgment on all claims asserted against him.

Respectfully submitted,


*/s/ Zachary R. Hoover*

Bobbie S. Sprader (0064015)
bobbie.sprader@dinsmore.com
Zachary R. Hoover (0097672)
zachary.hoover@dinsmore.com
Dinsmore & Shohl LLP
191 West Nationwide Boulevard, Suite 200
Columbus, Ohio 43215
Telephone (614) 628-6880
Fax (614) 628-6890
*Counsel for Defendant George Wilson, D.O.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing *Renewed Motion for Summary Judgment of Dr. Wilson* was served via the Court's electronic filing system and E-mail this 7th day of February, 2025:

Neal E. Shapero, Esq.
Andrew J. Thompson, Esq.
Shapero Roloff Co., LPA
1111 Superior Avenue East, Suite 1310
Cleveland, Ohio 44114
nshapero@shaperoroloff.com
athompson@shaperoroloff.com

-and-

Jillian L. Dinehart, Esq.
Marshall Dennehey
127 Public Square, Suite 3510
Cleveland, Ohio 44114
jldinehart@mdwcg.com

*Counsel for Defendants*
*Correctional Solutions Group, LLC,*
*David Stanfield, T. Mackie, T. Prvonozac,*
*J. Danko, S. Fraser, and Lt. Delp*

Nicholas T. Amato, Esq.
Amato Law Office, LPA
420 Broadway Avenue
Wellsville, Ohio 43968
Amato.lawyer@gmail.com

*Counsel for Plaintiff*

Andrew D. Jamison, Esq.
Nicholas J. Siciliano, Esq.
Reminger Co., LPA
400 Courtyard Square
80 South Summit Street
Akron, Ohio 44308
Ajamison@reminger.com
nsiciliano@reminger.com

*Counsel for Defendants*
*Candy Hively, Melanie Agnone,*
*Laura Zuch-Battaglia, and*
*Merna Baker*

/s/ Zachary R. Hoover
Zachary R. Hoover (0097672)